1
2
3
4
5
6
7
8      **UNITED STATES DISTRICT COURT**
9      **SOUTHERN DISTRICT OF CALIFORNIA**
10

| | |
|---|---|
| 11  CARMEN MATTHEWS, | Case No.:  14cv1340-MMA (BLM) |
| 12                          Plaintiff, | **ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT;** |
| 13  v. | |
| 14  ROBERT McDONALD, Secretary, Department of Veterans Affairs, | [Doc. No. 58] |
| 15                          Defendant. | **GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION TO STRIKE;** |
| 16 | |
| 17 | [Doc. No. 87] |
| 18 | **GRANTING PLAINTIFF'S MOTION FOR LEAVE TO FILE A SUR-REPLY** |
| 19 | |
| 20 | [Doc. No. 100] |
| 21 | |

22      Plaintiff Carmen Matthews, proceeding *pro se*, has filed an amended complaint

23  against Defendant Robert McDonald in his capacity as the Secretary of the United States

24  Department of Veterans Affairs, in which she alleges harassment, retaliation, and

25  wrongful termination based on gender, race, sex, and disability discrimination.  *See* Doc.

26  No. 27.  Defendant moves for summary judgment as to all of Plaintiff's claims.  *See* Doc.

27  No. 58.  Plaintiff filed a response in opposition to the motion, *see* Doc. Nos. 77, 83, to

28

which Defendant replied.[1]  *See* Doc. No. 86.  For the reasons set forth below, the Court **GRANTS** Defendant's motion for summary judgment.

<u>**FACTUAL BACKGROUND**</u>[2]

Plaintiff is an African-American female who claims to be disabled due to anxiety and panic attacks.  She is a former volunteer and employee with the United States Department of Veterans Affairs San Diego Healthcare System (hereinafter referred to as "the VA").

Plaintiff started volunteering at the VA on July 5, 2010 in the Patient Advocacy section of the hospital.  Sometime in the fall of 2010, Plaintiff transferred to the Member Services division as a volunteer after being interviewed by Robert Earnest, the supervisor of the section.  At the end of October or beginning of November 2010, Plaintiff applied and interviewed for a paid position in a different department of the hospital.  According to Plaintiff, Earnest told her that she would never have a paid position at the VA.  Plaintiff interpreted Earnest's comment to mean that she would not be hired for a paid position because she refused to have sex with him.  Plaintiff did not get the paid position for which she had interviewed.  Plaintiff believes that Earnest influenced this hiring decision.

In November 2010, Plaintiff met with Elizabeth McDonald, Director of Health Administration and Earnest's supervisor, and Sheri Lacro, a Human Resources Specialist, to report allegations of sexual harassment against Plaintiff by Robert Earnest.

---

[1] Plaintiff moves for leave to file a sur-reply, which Defendant opposes.  *See* Doc. Nos. 100, 101, 103.  Because Plaintiff is proceeding *pro se*, the Court **GRANTS** Plaintiff's motion and considers her sur-reply and attached supporting exhibits.  Plaintiff appears to allege a new cause of action in her sur-reply brought pursuant to the Whistleblower Act of 1989, 5 U.S.C. § 2302.  *See* Doc. No. 100 at 8.  Since a defendant must have "fair notice" of a plaintiff's claims and grounds for relief, Plaintiff cannot raise new causes of action or grounds for relief in opposition to Defendant's motion for summary judgment. *See Pickern v. Pier 1 Imports (U.S.), Inc.*, 457 F.3d 963, 968 (9th Cir. 2006).

[2] This section provides a summary of the material facts of this case; it is not an exhaustive recitation of every factual allegation set forth by Plaintiff.  The material facts are taken from Defendant's separate statement of undisputed facts and Plaintiff's response thereto, together with pertinent exhibits and relevant deposition testimony.  Where a material fact is in dispute, it will be so noted.

In December 2010, Plaintiff was interviewed via telephone and hired by Allison Gill, Manager of the VA Call Center, for a GS-5 level paid position as a Medical Support Assistant ("MSA").  According to Plaintiff, her troubles in the Call Center began on her first day after employee orientation.  During a Call Center meeting led by Allison Gill and Sheri Lacro, Plaintiff alleges that Gill and Lacro shared a "look" that Plaintiff interpreted as being directed at her and reflective of their displeasure with her complaint against Earnest.  Also at that meeting, Plaintiff states that she was called out by Gill in front of the other participants for wearing blue jeans.  Gill informed Plaintiff that she would have to wear "less casual slacks."  Plaintiff claims that there was a difference between how men and women were permitted to dress for the job.

In January 2011, Plaintiff applied and interviewed for a GS-7 position as a Research Compliance Auditor.  One week later, the VA's Human Resources department advised Plaintiff that she could not take the position because she had already accepted the MSA position in the Call Center.  During this same time period, Gill solicited articles for a new newsletter.  Plaintiff submitted an article.  Gill did not acknowledge receipt.  The newsletter never came to fruition.  Also in January 2011, Plaintiff complained about the noise level.  Her supervisors, including Brenda Moore, the Call Center Team Lead and an African-American woman, advised her that nothing could be done about the noise level.

On April 21, 2011, Gill emailed Plaintiff her mid-term performance review.  Gill informed Plaintiff that she was performing her job successfully, and that official evaluations would take place in September.  During a team meeting that same date, Plaintiff once again complained to Gill about the noise level in the Call Center and informed Gill that the noise affected Plaintiff's breathing.  Gill advised Plaintiff that there was nothing she could do about the noise level.

In May 2011, Plaintiff applied and interviewed for one of two newly created Team Lead positions in the Call Center.  Gill conducted the interview together with two other panel members.  According to Plaintiff, Gill made sexist statements during the interview, including displaying favoritism towards Plaintiff's fellow Call Center employee, Adam

Doyle, with whom Plaintiff suspected Gill of having a sexual relationship.  Gill did not choose Plaintiff for the Team Leader positions.  Rather, on or about May 3, 2011, Gill promoted two Call Center employees, April Adams and Aaron McDevitt.  April Adams is an African-American woman.  Aaron McDevitt had been employed approximately one month longer than Plaintiff.

On May 5, 2011, Plaintiff sought advice from the Patient Advocate Director regarding purported problems and discrimination she had experienced in the Call Center. The Patient Advocate Director advised Plaintiff to contact the Union.  In the meantime, the next day, in regards to positive feedback Plaintiff had received from veterans dialing in to the Call Center, Adams sent Plaintiff an email stating "How much cash are you paying the vets so I can jump on the band wagon lol."

On May 10, 2011, Plaintiff met with a Union representative regarding her treatment in the Call Center.

On May 12, 2011, Plaintiff met with Marlene Carvajal, the Equal Employment Opportunity ("EEO") Manager for the VA, and filed a written Report of Contact regarding Gill's alleged fraud on the VA, poor performance as a supervisor, and discrimination and harassment against Plaintiff based on gender.  Plaintiff concedes that the internal complaint did not reference any instances of alleged racial discrimination or reference the sexual harassment by Robert Earnest.  The next day, Elizabeth McDonald temporarily detailed Gill out of the Call Center pending the results of an Administrative Investigation Board ("AIB") inquiry into Plaintiff's claims regarding Gill's performance. Brenda Moore was appointed as the acting supervisor of the Call Center during Gill's absence.  On June 8, 2011, Plaintiff testified in front of the AIB regarding her accusations against Gill.  Moore, McDevitt, and Adams also testified.  The following day, Plaintiff approached Moore regarding the noise level in the Call Center and its impact on Plaintiff's breathing.  Moore did nothing.

On June 20, 2011, Moore received a complaint from a patient advocate regarding a phone call the advocate's patient had with Plaintiff.  Plaintiff interrupted the patient

multiple times during the call and responded to the patient's question in an angry manner. That same day, during another call with a patient, Plaintiff interrupted the patient while the patient was speaking.

On June 22, 2011, Plaintiff approached Adams regarding the noise level in the Call Center.  Adams told three employees in nearby cubicles that Plaintiff had complained about the noise level of their voices.  The next day, Plaintiff asked Adams for clarity regarding a new Call Center rule and Adams responded using "Ebonics."[3]  Adams once again spoke to Plaintiff using "Ebonics" on July 12, 2011.  Plaintiff felt that this constituted racial discrimination and harassment.

On July 20, 2011, Plaintiff sought treatment at work for stress, heart palpitations, tingling in her upper arms, and shortness of breath.  Plaintiff indicated that her symptoms were the result of the noise level in the Call Center.

Gill returned as supervisor of the Call Center on August 2, 2011.  Several days later, at a team meeting, Plaintiff felt hostility between herself and Gill.  The next day, McDevitt submitted a report to Gill of insubordination by Plaintiff based on Plaintiff's refusal to read McDevitt's emails.  Also on August 3, 2011, Plaintiff sought treatment at work for stress, heart palpitations, tingling in her upper arms, and difficulty breathing. Plaintiff indicated that her symptoms were the result of "perceived threats" from her supervisor of potential punitive action during the August 2 team meeting.

On August 16, 2011, Plaintiff contacted an EEO Counselor and filed a Complaint of Employment Discrimination with the Office of Resolution Management.

On August 20, 2011, Plaintiff told a veteran on the phone that she was not going to continue to speak to him because the phone call had already lasted for nine minutes and 26 seconds.

On August 24, 2011, McDonald recommended to Sheri Lacro that Plaintiff's

---

[3] "Ebonics' is also known as 'African American Vernacular English.'"  *Washington v. McDonald*, 2009 U.S. Dist. LEXIS 59607, at *38 (E.D. Cal. July 10, 2009) (citing Webster's II New College Dict. (2001) p. 356, col. 1.)

1   employment be terminated.  McDonald's recommendation was based on input from Gill

2   and Moore.  In an email to Lacro, McDonald indicated that she was recommending

3   termination based on Plaintiff's "loafing," "willful idleness," and wasting time, as well as

4   poor customer service.  McDonald attached a call log indicating that from July 1, 2011 to

5   August l8, 2011, Plaintiff was logged into the system to take calls for less than 6 hours

6   per day for 76% of the days.  McDonald noted that on June 30, 2011, Brenda Moore had

7   addressed the issue of being logged out for too long with Plaintiff, and on August 5,

8   2011, Gill advised everyone in the Call Center during a team meeting that they need to be

9   logged in for at least 6.5 hours per day.  McDonald stated that after this meeting, Plaintiff

10  continued to be logged in for less than 6 hours on 5 out of 9 days.  McDonald also noted

11  in the email that Plaintiff refused to read emails from the Team Leads, made personal

12  calls and surfed the internet on facility time, and took unauthorized breaks.  McDonald

13  also detailed the allegations of Plaintiff's poor customer service.

14       On September 12, 2011, Plaintiff faxed a written request for a reasonable

15  accommodation for her anxiety and panic attacks to Carvajal, who acted as Chair of the

16  VA's Reasonable Accommodation Committee.  The next day, Plaintiff authorized the

17  release of her medical records.  Carvajal advised Plaintiff that she would need a doctor's

18  note to support her request.  Plaintiff provided two notes from her primary care physician.

19  Carvajal received the second note on September 23, 2011.

20       On September 26, 2011, Linette Baker, the Acting Chief of Human Resources

21  Management Service, issued a letter of termination to Plaintiff.  The stated reasons for the

22  termination included poor customer service, wasting time, and failure to follow

23  instructions, including failure to read emails when instructed to do so.[4]

24  _____

25  [4] Plaintiff alleges that she did not receive the required written notice of termination pursuant to 5 C.F.R.
26  315.804.  *See* Doc. No. 100 at 7.  However, Baker's September 26, 2011 letter to Matthews constitutes
    the written notice required under the applicable federal regulation, and cites that regulation accordingly.
27  *See Def. Ex. I.*  The regulation requires a federal agency when terminating an individual's employment
    to notify him or her "in writing as to why he [or she] is being separated and the effective date of the
28  action. The information in the notice as to why the employee is being terminated shall, as a minimum,

Plaintiff filed this lawsuit on June 2, 2014, alleging sexual and racial harassment; discrimination based on gender, race, and disability; retaliation; and failure to accommodate her disability.[5]

## MOTION FOR SUMMARY JUDGMENT

Defendant moves for summary judgment as to all of Plaintiff's claims.  Defendant argues that certain claims should be dismissed based on Plaintiff's failure to comply with the pre-filing administrative exhaustion requirement.  With respect to Plaintiff's exhausted claims, Defendant argues that Plaintiff fails to establish a prima facie case of discrimination and her remaining claims fail as a matter of law.  In response, Plaintiff has submitted over 1400 pages of legal briefs and exhibits in support of her claims.[6]

### 1. *Legal Standard*

"A party may move for summary judgment, identifying each claim or defense – or the part of each claim or defense – on which summary judgment is sought.  The court shall grant summary judgment if the movant shows that there is no genuine dispute as to

---

consist of the agency's conclusions as to the inadequacies of his performance or conduct."  5 C.F.R. 315.804.  Baker's letter complies with this regulation.

[5] In her amended complaint, Plaintiff sets forth thirty individual "counts" of discrimination, retaliation, and harassment based on her gender, race, and disability.  *See* Doc. No. 27.  The Court notes that while Federal Rule of Civil Procedure 10(b) provides that "[e]ach claim founded upon a separate transaction or occurrence . . . shall be stated in a separate count . . .," this provision is addressed to separate factual claims rather than to separate legal grounds for relief.  Here, Plaintiff's thirty separate "counts" are not each independent legal causes of action.  Rather, Plaintiff's numerous factual allegations set forth grounds for a variety of causes of action under, *inter alia*, Title VII and the Rehabilitation Act.

[6]  The Court has reviewed and carefully considered the entirety of Plaintiff's submissions.  However, regardless of Plaintiff's *pro se* status, the Court is not obligated to "'scour the record in search of a genuine issue of triable fact.'"  *Keenan v. Allan*, 91 F.3d 1275, 1279 (9th Cir. 1996) (citation omitted).  To the extent Plaintiff's legal briefs fail to cite to specific exhibits or other materials in the record, the Court is not required to search the entire record for evidence establishing a genuine issue of material fact.  *See Carmen v. S.F. Unified Sch. Dist.*, 237 F.3d 1026, 1028-29 (9th Cir. 2001); *Keenan*, 91 F.3d at 1278-79 (noting that opposing papers, due to size and poor citation, "obfuscate[d] rather than promote[d] an understanding of the facts," and declining to scour papers or the rest of the record to determine if genuine issue of material fact existed).  Furthermore, "[a] party may not prevail in opposing a motion for summary judgment by simply overwhelming the district court with a miscellany of unorganized documentation."  *Zoslaw v. MCA Distributing Corp.*, 693 F.2d 870, 883 (9th Cir. 1982).

any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ.
P. 56(a).  The party seeking summary judgment bears the initial burden of establishing
the basis of its motion and of identifying the portions of the declarations, pleadings, and
discovery that demonstrate absence of a genuine issue of material fact.  *Celotex Corp. v.
Catrett*, 477 U.S. 317, 323 (1986).  A fact is material if it could affect the outcome of the
suit under applicable law.  *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248-49
(1986).  A dispute about a material fact is genuine if there is sufficient evidence for a
reasonable jury to return a verdict for the non-moving party.  *Id.* at 248.

The party opposing summary judgment cannot "'rest upon the mere allegations or
denials of [its] pleading' but must instead produce evidence that 'sets forth specific facts
showing that there is a genuine issue for trial.'"  *Estate of Tucker v. Interscope Records*,
515 F.3d 1019, 1030 (9th Cir.), cert. denied, 555 U.S. 827 (2008) (quoting Fed. R. Civ. P.
56(e)).  However, as the Ninth Circuit recently reminded district courts, "it should not
take much for plaintiff in a discrimination case to overcome a summary judgment
motion."  *Nigro v. Sears, Roebuck & Co.*, 784 F.3d 495, 499 (9th Cir. 2015) (citations
and internal quotation omitted); s*ee also Schechner v. KPIX-TV*, 686 F.3d 1018, 1022
(9th Cir. 2012) ("As a general matter, the plaintiff in an employment discrimination
action need produce very little evidence in order to overcome an employer's motion for
summary judgment.").

In cases where a party is self-represented, courts apply the general summary
judgment standard, but construe the *pro se* litigant's pleadings liberally in his or her
favor.  *See Eldridge v. Block*, 832 F.2d 1132, 1137 (9th Cir. 1987) ("The Supreme Court
has instructed federal courts to liberally construe the 'inartful pleading' of *pro se*
litigants.") (citations omitted).

## 2.   *Defendant's Motion to Strike*

As an initial matter, Defendant moves to strike certain exhibits submitted by
Plaintiff in support of her response to Defendant's motion.  *See* Doc. No. 87.  Plaintiff
opposes the motion to strike.  *See* Doc. No. 96.

First, Defendant moves to strike the exhibits Plaintiff filed on October 22, 2015, Doc. No. 77, pp. 273 to end, on the grounds that Plaintiff filed a second set of exhibits on October 28, 2015, Doc. Nos. 83 and 83-1.  Based on Plaintiff's *pro se* status, the Court **DENIES** Defendant's motion to strike this evidence from the record.

Second, Defendant requests that the Court disregard the handwritten comments on Plaintiff's Exhibits 11, 18, 26, 28, 31, 42, 43, 44, 62, 71, 73, 75, 108, 117, 132, 134 and 138.[7]  Defendant argues that Plaintiff has not authenticated the handwritten comments, nor provided a proper foundation for their admission into evidence.  In response to Defendant's motion to strike, Plaintiff has submitted documentation which she argues authenticates the handwritten comments.  It appears that in certain instances the handwritten interlineation was prepared by Plaintiff for submission as supplemental and/or rebuttal argument to the EEO Investigator who handled her complaint.  In any event, the notes contain commentary on the substance of the exhibits' contents.  Plaintiff's handwritten notes, even if properly authenticated as her own, constitute argument and are not admissible as evidence.  As such, the Court **GRANTS** Defendant's motion on this ground and has disregarded the handwritten comments on Plaintiff's exhibits.

Finally, Defendant moves to strike Plaintiff's Exhibit 17 in its entirety and the first page of Plaintiff's Exhibit 134 based on lack of foundation.  These exhibits purport to be excerpts from deposition transcripts.  Defendant notes that the cover pages, witness signature pages, and transcriber's signature pages are missing from both exhibits.  A party seeking to introduce a deposition transcript excerpt on summary judgment must attach the court reporter's certification that the deposition is a true and correct copy of the deponent's testimony, as the court reporter who transcribed the testimony has the requisite personal knowledge of the transcript's accuracy.  *Orr v. Bank of Amer.*, 285 F.3d 764, 774 (9th Cir. 2002) (citations omitted).  Without this certificate, a deposition

---

[7] The Court notes that handwritten interlineations appear on many other of Plaintiff's submitted exhibits.

transcript is inadmissible for purposes of summary judgment and will not be considered. See Fed. R. Civ. P. 56(c)(4); *United States v. Dibble*, 429 F.2d 598, 602 (9th Cir. 1970) (writings are not admissible under motion for summary judgment without proper foundation).  In response to Defendant's motion to strike, Plaintiff has provided certain cover pages and transcriber's signature pages.  To the extent Plaintiff's submission remedies the deficiencies identified by Defendant in his motion to strike, the Court finds the motion moot.  Any deposition transcript excerpts offered by Plaintiff that are not properly authenticated are inadmissible for purposes of summary judgment and will not be considered.

**3.**     ***Plaintiff's Title VII Claims***

Plaintiff claims she was discriminated against and harassed on the basis of race, sex, and gender.  Title VII prohibits consideration of "race, color, religion, sex, or national origin in employment practices," thereby establishing protected classes.  42 U.S.C. § 2000e-2(m).  Plaintiff is an African-American woman, thus she belongs to two protected classes based on her race and gender.  Title VII is the exclusive remedy for claims of employment discrimination by federal employees.  *See Brown v. General Servs. Admin.*, 425 U.S. 820, 829-35 (1976); *Taylor v. Geithner*, 703 F.3d 328, 333 (9th Cir. 2013).

**a)     Administrative Exhaustion**

Defendant argues that to the extent Plaintiff's Title VII claims arise out of events occurring prior to July 1, 2011, 45 days prior to Plaintiff's first contact with an EEO counselor on August 16, 2011, the claims are subject to dismissal for failure to comply with the pre-filing administrative exhaustion requirement.

Before bringing a Title VII claim in federal court, a federal employee must first exhaust his or her administrative remedies.  *B.K.B. v. Maui Police Dep't*, 276 F.3d 1091, 1099 (9th Cir. 2002).  The employee must initiate contact with an EEO counselor within forty-five days of the date of the alleged discrimination or adverse action.  *See* 29 C.F.R. § 1614.105(a)(1) ("An aggrieved person must initiate contact with a Counselor within 45

days of the date of the matter alleged to be discriminatory or, in the case of personnel action, within 45 days of the effective date of the action."); *Sommatino v. United States*, 255 F.3d 704, 707-708 (9th Cir. 2001).  For purposes of Title VII, a claim "accrues upon awareness of the actual injury, i.e., the adverse employment action, and not when the plaintiff suspects a legal wrong." *Lukovsky v. City & County of San Francisco*, 535 F.3d 1044, 1049 (9th Cir. 2008).

Defendant has submitted uncontroverted evidence that Plaintiff's first contact with an EEO counselor occurred on August 16, 2011.  *See* Def. Ex. J.  However, it is also undisputed that Plaintiff met with Marlene Carvajal, the EEO Manager for the VA, on May 12, 2011.  *See* Def. Ex. F.  The Ninth Circuit has interpreted the initiation of contact provision to include reporting to not only individuals with the specific job title of Counselor, but also "contact with agency officials with EEO counseling responsibilities or a connection to the counseling process." *Kraus v. Presidio Trust Facilities Div.*, 572 F.3d 1039, 1044 (9th Cir. 2009).  Plaintiff's meeting with Carvajal and submission of a written Report of Contact as an internal complaint qualify under this standard as the type of contact required under the applicable regulation. *Id*. at 1045 (noting that "it makes good sense to interpret 'contact with a Counselor' pragmatically, to include contact with agency officials with EEO counseling responsibilities or a connection to the counseling process").

To the extent Plaintiff's Title VII claims arise out of events occurring prior to March 28, 2011, 45 days prior to her first contact with Marlene Carvajal, the claims are unexhausted. *Lyons v. England*, 307 F.3d 1092, 1105 (9th Cir. 2002) (failure to comply with the 45 day requirement is "fatal to a federal employee's discrimination claim"). Furthermore, Plaintiff's May 12, 2011 written Report of Contact submitted to Carvajal – despite being quite detailed – does not include a complaint of racial or sexual discrimination or harassment.  Thus, to the extent Plaintiff's racial and sexual discrimination and harassment claims are based on events occurring prior to July 1, 2011, 45 days prior to her first contact with Carvajal regarding such allegations, the claims are

unexhausted.

In her sur-reply, Plaintiff argues that she was unaware of the requirement that she initiate contact with an EEO counselor within 45 days of an alleged discriminatory event or adverse employment action.  "The exhaustion requirement is akin to a statute of limitations and is subject to waiver, equitable estoppel, and equitable tolling." *Leong v. Potter*, 347 F.3d 1117, 1122-1123 (9th Cir. 2003) (citing *Zipes v. Trans World Airlines, Inc.*, 455 U.S. 385, 393 (1982); *Boyd v. U.S. Postal Serv.*, 752 F.2d 410, 414 (9th Cir. 1985)).  The Court construes Plaintiff's argument as a request for equitable tolling, and finds it to be without merit.  Plaintiff has submitted evidence in opposition to Defendant's motion for summary judgment which demonstrates that she knew of the 45 day requirement at least as early as May 12, 2011, when she submitted her internal complaint to Carvajal.  *See* Doc. No. 77 at 289.  Plaintiff's signature appears at the bottom of the internal complaint form, immediately below the following admonition:

> If you feel that you have been discriminated against & wish to file an EEO complaint, you must contact an ORM Counselor within 45-calendar days of the alleged incident in order to preserve your EEO rights.

*Id*.  Equitable tolling is not appropriate in this case, as Plaintiff had actual notice of the 45 day filing period.  *Leorna v. United States Dep't of State*, 105 F.3d 548, 551 (9th Cir. 1997).

### b)    Exhausted Harassment and Discrimination Claims

Plaintiff alleges discrimination and harassment on the basis of race and gender.  Defendant argues that Plaintiff cannot establish a prima facie case of discrimination.  Defendant further asserts that the alleged discriminatory acts do not give rise to an actionable harassment claim.

To establish a prima facie case for her hostile work environment claim under Title VII, Plaintiff must raise a genuine dispute of fact as to whether (1) she was "subjected to verbal or physical conduct" because of her race or gender; (2) "the conduct was unwelcome"; and (3) "the conduct was sufficiently severe or pervasive to alter the

conditions of [Plaintiff's] employment and create an abusive work environment." *Manatt v. Bank of Am., NA*, 339 F.3d 792, 798 (9th Cir. 2003).  "[S]imple teasing, offhand comments, and isolated incidents (unless extremely serious) will not amount to discriminatory changes in the terms and conditions of employment." *Faragher v. City of Boca Raton*, 524 U.S. 775, 788 (1998) (citations and internal quotation marks omitted).

Discrimination in the form of disparate treatment occurs when, predicated upon a particular trait, an employee receives treatment less favorable than other employees. *Wood v. City of San Diego*, 678 F.3d 1075, 1081 (9th Cir. 2012).  In pertinent part, Title VII's disparate treatment provision provides: "[A]n unlawful employment practice is established when the complaining party demonstrates that race, color, religion, sex, or national origin was a motivating factor for any employment practice, even though other factors also motivated the practice."  42 U.S.C. § 2000e-2(m).  A plaintiff establishes a prima facie claim for disparate treatment by showing that: "(1) they belonged to a protected class; (2) they were qualified for their jobs; (3) they were subjected to an adverse employment action; and (4) similarly situated employees not in their protected class received more favorable treatment." *Moran v. Selig*, 447 F.3d 748, 753 (9th Cir. 2006); *see also McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973).  "If the plaintiff establishes a prima facie case, the burden of production shifts to the employer to articulate a legitimate, nondiscriminatory reason for the employment decision.  Although the burden of production shifts to the defendant at this point, the burden of proof remains with the plaintiff at all times.  If the employer offers a nondiscriminatory reason, the burden returns to the plaintiff to show that the articulated reason is a pretext for discrimination." *Leong*, 347 F.3d at 1124 (internal citations omitted).

Plaintiff's only exhausted allegation of racial discrimination or harassment involves April Adams, an African-American, speaking to Plaintiff using "Ebonics" on

July 12, 2011.[8]  This event constitutes neither discrimination nor harassment.  Plaintiff did not suffer an adverse employment action as a result of this exchange, and a single incident can only support a hostile work environment claim when that incident is "extremely severe."  *Brooks v. City of San Mateo*, 229 F.3d 917, 926 (9th Cir. 2000). Adams' exchange with Plaintiff simply does not suffice to establish racial harassment. *See, e.g., Manatt*, 339 F.3d at 798 (holding that racial jokes, ridicule of plaintiff's accent, and act of pulling eyes back to imitate or mock the appearance of Asians were insufficient to create a hostile work environment); *Vasquez v. County of Los Angeles*, 349 F.3d 634, 643 (9th Cir. 2003) (finding no hostile environment discrimination where the employee was told that he had "a typical Hispanic macho attitude," that he should work in the field because "Hispanics do good in the field." and where he was yelled at in front of others); *see also Jordan v. Clark*, 847 F.2d 1368, 1374-75 (9th Cir. 1988) (finding no hostile work environment where "off-color" jokes were told in workplace).

Plaintiff's only exhausted allegation of gender discrimination or harassment involves the purportedly sexist statements made by Allison Gill during Plaintiff's May 2011 interview for a Team Lead position in the Call Center, including Gill's "endless praise" of Adam Doyle, and Gill's subsequent failure to select Plaintiff for one of the two available positions.[9]

---

[8] As discussed *supra*, Plaintiff did not administratively exhaust her claims of racial discrimination and harassment as to Allison Gill.  Even if those claims were properly before the Court, Plaintiff's allegations are not borne out by the evidence.  For example, Plaintiff submits letters and deposition testimony from Donna Camp and Anita Mitchell, both of whom Gill supervised in the Call Center.  *See* Doc. No. 83-1 at 37-41; Doc. No. 100 at 106-262.  However, these individuals' statements and testimony do not establish that Gill racially discriminated against or harassed Plaintiff.  Mitchell refused to testify during her deposition that Gill was racist, while Camp testified that Gill did not like her because Camp did not "suck up" to Gill.  *See* Doc. No. 100 at 158, 233.

[9] Plaintiff asserts that Gill referred to Plaintiff as a "man" on two occasions, *see* Doc. No. 58-3 at 43, including once in May 2011, *see* Doc. No. 77 at 244.  However, Plaintiff makes no such allegation in her amended complaint, nor did she include this information in either her May 12, 2011 internal EEO complaint or her November 16, 2011 complaint of employment discrimination.

Title VII is not a "general civility code" and does not render actionable "'the ordinary tribulations of the workplace, such as the sporadic use of abusive language, gender-related jokes, and occasional teasing' . . . conduct must be extreme to amount to a change in the terms and conditions of employment." *Faragher*, 524 U.S. at 788 (internal citations omitted). Gill's statements during Plaintiff's interview for a Team Lead position do not amount to gender harassment under the standards set forth by the Supreme Court. To the extent Gill made laudatory statements regarding Adam Doyle during Plaintiff's interview, or otherwise behaved inappropriately towards Doyle in front of Plaintiff during the time period in question, statements or conduct that create "a sexually charged environment" are insufficient to support a hostile work environment claim. *Candelore v. Clark County Sanitation Dist.*, 975 F.2d 588, 590 (9th Cir. 1992) ("A co-worker's romantic involvement with a supervisor does not by itself create a hostile work environment.).

Nor does this incident establish gender discrimination against Plaintiff. Even assuming Plaintiff has established the first three requirements of a discrimination claim based on Gill's disparate treatment, she fails to establish the fourth. With respect to Gill's decision not to select Plaintiff for a Team Lead position, the two individuals selected were April Adams, an African-American female and therefore a member of Plaintiff's protected classes, and Aaron McDevitt, a Caucasian male who had been working at the VA for a longer period of time than Plaintiff.[10] Furthermore, Gill's statements during the interview "endlessly praising another applicant (Adam Doyle)" do not establish gender discrimination against Plaintiff, nor do they establish disparate treatment, as Doyle was not hired for either of the Team Lead positions. *Ackel v. Nat'l Communs., Inc.*, 339 F.3d 376, 382 (5th Cir. 2003) ("[w]hen an employer discriminates in favor of a paramour, such an action is not sex-based discrimination, as the favoritism,

---

[10] Plaintiff argues that McDevitt had "less experience," but provides no evidence to this effect and concedes that McDevitt had been working at the VA approximately one month longer than she.

while unfair, disadvantages both sexes alike for reasons other than gender.").

With respect to the ultimate termination of Plaintiff's employment, Plaintiff fails to produce evidence that any other VA employee, facing similar allegations of poor performance and misconduct, not in her protected class, received more favorable treatment than she.  Even if Plaintiff could establish a prima facie case of gender discrimination, Defendant has offered sufficient evidence of a legitimate, non-discriminatory reason for the decision to terminate Plaintiff's employment, and Plaintiff does not raise a genuine issue as to pretext.  In cases based on circumstantial evidence of discrimination, such as this one, a plaintiff's evidence of pretext "must be specific and substantial to defeat the employer's motion for summary judgment." *EEOC v. Boeing Co.*, 577 F.3d 1044, 1049 (9th Cir. 2009).  Plaintiff produces no actual evidence, circumstantial or otherwise, that she was fired based on her gender.  She offers only speculation.  "[A] plaintiff's belief that a defendant acted from unlawful motive, without evidence supporting that belief, is no more than speculation or unfounded accusation about whether the defendant really did act from an unlawful motive." *Carmen v. San Francisco Unified School District*, 237 F.3d 1026, 1028 (9th Cir. 2001).

Accordingly, the Court **GRANTS** Defendant's motion for summary judgment as to Plaintiff's race- and gender-based discrimination and harassment claims.

### c)     Retaliation Claim

Plaintiff alleges that she was fired in retaliation for engaging in protected activity, to wit, submitting an internal EEO complaint on May 12, 2011; continuing to follow up on her allegations of discrimination while still employed at the VA in the Call Center; and contacting an EEO counselor on August 16, 2011.  Defendant argues that Plaintiff's retaliation claim fails because her May 12, 2011 complaint was not a protected activity and she cannot establish that her supervisors had knowledge of her August 16, 2011 contact with an EEO counselor.

"Title VII's antiretaliation provision forbids employer actions that 'discriminate against' an employee (or job applicant) because he has 'opposed' a practice that Title VII

16

forbids or has 'made a charge, testified, assisted, or participated in' a Title VII 'investigation, proceeding, or hearing.'" *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 59 (2006) (quoting 42 U.S.C. § 2000e-3). In this case, Plaintiff has not proffered admissible "direct evidence" of retaliation, i.e., "evidence which, if believed, proves the fact" of retaliatory motive "without inference or presumption." *Vasquez v. County of Los Angeles*, 349 F.3d 634, 640 (9th Cir. 2004). Accordingly, Plaintiff's retaliation claim is governed by the burden-shifting framework set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). To support a prima facie claim of retaliation, Plaintiff must show "that (1) [s]he engaged in a protected activity; (2) [her] employer subjected [her] to an adverse employment action; and (3) a causal link exists between the protected activity and the adverse action." *Ray v. Henderson*, 217 F.3d 1234, 1240 (9th Cir. 2000).

Here, Plaintiff has sufficiently demonstrated that she engaged in a protected activity by filing an internal complaint against Gill on May 12, 2011.[11] *Villiarimo v. Aloha Island Air, Inc.*, 281 F.3d 1054, 1064 (9th Cir. 2002) (citing *Kotcher v. Rosa and Sullivan Appliance Ctr., Inc.*, 957 F.2d 59, 65 (2d Cir. 1992) (finding internal complaint to company management was protected under Title VII, noting that "Congress sought to protect a wide range of activity in addition to the filing of a formal complaint") (internal quotation marks omitted)); *see also Trent v. Valley Elec. Ass'n Inc.*, 41 F.3d 524, 526 (9th Cir. 1994) ("We have held that when an employee protests the actions of a supervisor such opposition is a 'protected activity.'"). Plaintiff has produced evidence sufficient to create a question of fact as to whether her supervisors were aware that she was continuing to pursue her complaint of discrimination through September 2011. *See* Doc. No. 83-1 at 285.

There is also no dispute that Plaintiff suffered an adverse employment action after filing her May 12, 2011 internal complaint against Gill – her employment was terminated

---

[11] Plaintiff's August 16, 2011 contact with an EEO counselor also constitutes protected activity under Title VII, however, there is no evidence in the record to suggest that McDonald or Gill was aware of Plaintiff's contact.

on September 26, 2011. However, as the Ninth Circuit has held, a months-long "lapse between protected activity and an adverse employment action is simply too long, by itself, to give rise to an inference of causation." *Villiarimo*, 281 F.3d at 1065 (citing *Filipovic v. K & R Express Sys., Inc.*, 176 F.3d 390, 398-99 (7th Cir. 1999) (four months too long); *Adusumilli v. City of Chicago*, 164 F.3d 353, 363 (7th Cir. 1998) (eight months), cert. denied, 528 U.S. 988 (1999); *Davidson v. Midelfort Clinic, Ltd.*, 133 F.3d 499, 511 (7th Cir. 1998) (five months); *Conner v. Schnuck Markets, Inc.*, 121 F.3d 1390, 1395 (10th Cir. 1997) (four months)). Here, Plaintiff's initial engagement in a protected activity occurred in May 2011. Her employment was not terminated until the end of September 2011, more than four months later. Even if this period of time was sufficient to infer causation, "timing alone," when "accompanied by evidence" of a plaintiff's poor work performance or behavior problems, and "coupled with a complete lack of evidence of retaliatory intent, is neither specific nor substantial circumstantial evidence." *Davenport v. Bd. of Trs. of the State Ctr. Cmty. College Dist.*, 654 F. Supp. 2d 1073, 1102 (E.D. Cal. 2009).

As direct evidence of retaliation, Plaintiff proffers her own testimony regarding statements made by Elizabeth McDonald in November 2011 subsequent to the termination of Plaintiff's employment. Plaintiff testified during her deposition that McDonald told her "[a]nybody that files any kind of EEO complaint, as you did, is a problem employee" "to be gotten rid of." *See, e.g.*, Doc. No. 58-3 at 32. According to Plaintiff, McDonald also told her "[i]f you promise to not sue us, we will agree to change your termination status to your having resigned." *See* Doc. No. 77 at 60. Importantly, Plaintiff asserts that McDonald made these statements during a post-termination mediation meeting. As such, the statements are inadmissible to prove Defendant's liability for retaliation. Federal Rule of Evidence 408 prohibits any party from offering, for certain purposes, evidence of offers to settle or "conduct or statements made in compromise negotiations regarding the claim." Fed. R. Evid. 408(a). Here, Rule 408 prohibits Plaintiff from introducing McDonald's statements to defeat summary judgment.

*Coleman v. Quaker Oats Co.*, 232 F.3d 1271, 1291 (9th Cir. 2000).

Even assuming Plaintiff has established a prima facie case of retaliation, Defendant provides substantial evidence of Plaintiff's poor customer service and conduct issues, while Plaintiff fails to demonstrate pretext. The evidence demonstrates that Plaintiff complained about Gill's misconduct and gender discrimination, and Plaintiff was *not* retaliated against. Rather, Gill was immediately removed from her supervisory position in the Call Center while AIB conducted the requisite investigation into Gill's conduct. Plaintiff continued in her position as an MSA in the Call Center under the supervision of Brenda Moore, where she remained for almost two more months after Gill's reinstatement.

Plaintiff submits satisfactory performance reviews with respect to individual telephone calls that she received during the period of time in question to establish that the VA's stated reasons for terminating her employment were pretextual. However, this evidence does not demonstrate retaliatory intent on the part of her supervisors at the VA. If anything, the satisfactory performance reviews indicate that Gill continued to review Plaintiff on the proper basis of the work she actually performed despite any knowledge of Plaintiff's engagement in protected activity.

Accordingly, the Court **GRANTS** Defendant's motion for summary judgment as to Plaintiff's retaliation claim.

### 5.   *Plaintiff's Rehabilitation Act Claim*

Plaintiff alleges that Defendant discriminated against her based on her disability, anxiety and panic attacks, and failed to reasonably accommodate her disability, in violation of Section 501 of the Rehabilitation Act, 29 U.S.C. § 791. Defendant argues that Plaintiff is not disabled within the meaning of the Rehabilitation Act.

To state a prima facie claim of disability discrimination, Plaintiff must "demonstrate that (1) she is a person with a disability, (2) who is otherwise qualified for employment, and (3) suffered discrimination because of her disability." *Walton v. United States Marshals Serv.*, 492 F.3d 998, 1005 (9th Cir. 2007). Both disparate treatment of a

disabled person and refusal to make a reasonable accommodation for a disabled person are actionable.  *See Vinson v. Thomas*, 288 F.3d 1145, 1154 (9th Cir. 2002).  A plaintiff need only demonstrate that her disability was a "motivating factor" behind the discrimination.  *See* 29 U.S.C. § 791(g) (adopting ADA standards for claims under § 501 of the Rehabilitation Act); *Head v. Glacier Northwest, Inc*., 413 F.3d 1053, 1065 (9th Cir. 2005) (holding that "a motivating factor standard is the appropriate standard for causation in the ADA context").

The ADA standards incorporated into section 501 define a disability as a "physical or mental impairment that substantially limits one or more major life activities," or a "record of such an impairment," or "being regarded as having such an impairment."  42 U.S.C. § 12102(1)(A)-(C); *Walton*, 492 F.3d at 1005 (applying ADA standard to Rehabilitation Act claim).  Plaintiff maintains that she is disabled due to anxiety and panic attacks, as substantiated by her primary healthcare provider, her request for a reasonable accommodation, her release of medical records, and her incident reports while employed in the Call Center regarding the noise level.  As additional evidence of her disability, Plaintiff has submitted a declaration from Reina Remy, a VA-contracted licensed social worker, who began providing Plaintiff with counseling on September 30, 2015 after Plaintiff suffered a panic attack in August 2015.  *See* Doc. No. 83-1 at 29-31.  According to Remy, Plaintiff "meets criteria for a DSM 5 diagnosis of Other Trauma and Stressor Related Disorder with Adjustment-like Disorder with prolonged duration, but without prolonged stressor."  *Id*. at 30.  Remy also states that Plaintiff "self-reports this was brought about while she worked at the VASDHS, and has continued since her September 2011 termination from VASDHS."  *Id*.  Based on the fact that Remy did not start treating Plaintiff until four years after the termination of her employment at the VA, Remy's declaration does little to substantiate Plaintiff's claim of disability based on panic attacks and anxiety at the time of the events at issue in this action.

Even assuming that Plaintiff is disabled, Plaintiff's Rehabilitation Act claim fails.  There is no identifiable evidence in the record to support a claim of discrimination based

on Plaintiff's anxiety and panic attacks.  The individual tasked with processing Plaintiff's September 12, 2011 request for a reasonable accommodation was not involved with the recommendation or decision to fire Plaintiff.  To the extent Plaintiff made earlier, informal requests for a reduced noise level in the Call Center as an accommodation for her anxiety, Plaintiff herself has submitted evidence that steps were being taken to reduce the noise level in the Call Center.  A July 20, 2011 VA Incident Report noted that the Call Center had requested a build-out of workstations to reduce noise levels.  *See* Doc. No. 83 at 167.  And in an August 30, 2011 email to Plaintiff, Gill set forth the steps she was taking to try and reduce the noise level in the Call Center, including "requisitioning an entire office re-model for new workstations 7 months ago," speaking "to each employee individually about the noise level," and addressing "the issue with everyone during our staff meeting."  *See* Doc. No. 77 at 322.

Plaintiff did not submit a formal written request for a reasonable accommodation until September 12, 2011, at which point Gill and McDonald had already recommended that Plaintiff's employment at the VA be terminated.  Nonetheless, Plaintiff's request was processed by Marlene Carvajal.  Carvajal requested and gathered the necessary information regarding Plaintiff's medical condition, and scheduled a meeting of the VA's reasonable accommodation committee.  Plaintiff's request for a reasonable accommodation was never refused.  Rather, Plaintiff's employment was officially terminated before the request could be brought before the committee for consideration.  Plaintiff has failed to raise a triable dispute as to whether she was denied a reasonable accommodation.

Accordingly, the Court **GRANTS** Defendant's motion for summary judgment as to Plaintiff's Rehabilitation Act claim.

### 6.   *Plaintiff's ADA Claim*

Plaintiff alleges a claim under the Americans with Disabilities Act, 42 U.S.C. §§ 12101 *et seq*.  The Rehabilitation Act is the sole means to remedy disability discrimination by a federal employer.  *See* 42 U.S.C. § 12111(5)(B)(i) (declaring that the

1   federal government is not an "employer" for purposes of the ADA); *Newland v. Dalton*,

2   81 F.3d 904, 906 (9th Cir. 1996) (noting that Section 501 incorporates ADA standards);

3   *Johnston v. Horne*, 875 F.2d 1415, 1420-21 (9th Cir. 1989) (concluding that Section 504

4   of Rehabilitation Act provides no cause of action against a federal employer).  As such,

5   the Court **GRANTS** Defendant's motion for summary judgment as to Plaintiff's ADA

6   claim because the ADA does not apply to federal employers.

7   **7.   *Plaintiff's Additional Claims***

8           Plaintiff also alleges claims for intentional infliction of emotional distress,

9   negligent infliction of emotional distress, violation of California's Fair Employment and

10   Housing Act ("FEHA"), violations of the Civil Rights Act, 42 U.S.C. §§ 1981 and 1983,

11   and violation of her Fourteenth Amendment rights.  These claims are subject to dismissal

12   on multiple grounds.

13          When the factual predicate of a federal employee's additional claims is the same as

14   that behind the employee's Title VII claim, only the Title VII remedy is available.  *Nolan*

15   *v. Cleland*, 686 F.2d 806, 815 (9th Cir. 1982) (affirming dismissal of a federal

16   employee's due process claim where it arose from same factual predicate as her Title VII

17   wrongful termination claim).  Plaintiff's additional claims are based upon the allegedly

18   discriminatory and harassing employment actions by VA employees, and therefore are

19   factually indistinguishable from her Title VII claims.  *See Williams v. Gen. Servs.*

20   *Admin.*, 905 F.2d 308, 311 (9th Cir. 1990) (holding that, due to its comprehensive scope,

21   Title VII preempts other claims such as tort and constitutional claims that seek to redress

22   wrongs predicated on discriminatory employment actions); *White v. Gen. Servs. Admin.*,

23   652 F.2d 913, 917 (9th Cir. 1981) (holding that Title VII is the sole remedy for a race

24   discrimination claim by a federal employee).

25          With respect to Plaintiff's tort claims, the FTCA is the exclusive remedy for filing

26   a civil action based on the tortious actions of a federal agency or officer.  *See* 28 U.S.C. §

27   2679; *Jerves v. United States*, 966 F.2d 517, 518 (9th Cir. 1992) ("The [FTCA] vests the

28   federal district courts with exclusive jurisdiction over suits arising from the negligence of

Government employees."). The FTCA "provides that the United States is the sole party which may be sued for personal injuries arising out of the torts of its employees." *Allen v. Veterans Admin.*, 749 F.2d 1386, 1388 (9th Cir. 1984) (citing 28 U.S.C. §§ 1346(b), 2679(a)). Plaintiff's tort claims are subject to dismissal for failure to name the United States as the proper defendant as required by the FTCA. Furthermore, the plaintiff in an action seeking relief under the FTCA bears the burden of showing that he or she complied with the FTCA's administrative claim requirement. *See Bruce v. United States*, 621 F.2d 914, 918 (8th Cir. 1980). Here, there is nothing in the record to suggest that Plaintiff exhausted her administrative remedies under the FTCA prior to filing this lawsuit.

Plaintiff's Fourteenth Amendment claim is barred by the doctrine of sovereign immunity in so far as she seeks damages. A suit for damages against federal officers or employees in their official capacity is essentially a suit against the United States and is barred by sovereign immunity absent statutory consent. *Gilbert v. DaGrossa*, 756 F.2d 1455, 1458 (9th Cir. 1985). The United States has not waived its sovereign immunity for actions seeking damages for constitutional violations. *See Holloman v. Watt*, 708 F.2d 1399, 1401-02 (9th Cir. 1983) (rejecting claimant's argument that sovereign immunity did not apply to his due process claim for damages when the federal defendants were being sued in their official capacity only).

Finally, Plaintiff's Section 1983 claim fails because "by its very terms, § 1983 precludes liability in federal government actors." *Morse v. N. Coast Opportunities, Inc.*, 118 F.3d 1338, 1343 (9th Cir. 1997) (finding the plaintiff's complaint "invalid on its face in its reliance upon § 1983 as a cause of action against alleged federal government actors"); *see also Ibrahim v. Dept. of Homeland Security*, 538 F.3d 1250, 1257 (9th Cir. 2008) (recognizing "the long-standing principle that federal officials can only be liable under section 1983 where there is a 'sufficiently close nexus between the State and the challenged action of the [federal actors] so that the action of the latter may be fairly treated as that of the State itself.'").

Accordingly, the Court **GRANTS** Defendant's motion for summary judgment and dismisses Plaintiff's additional state law, constitutional, and civil rights claims.

### CONCLUSION

Based on the foregoing, the Court **GRANTS** Defendant's motion for summary judgment in its entirety.  The Clerk of Court is instructed to enter judgment accordingly, terminate all pending deadlines and hearings, and close the case.

**IT IS SO ORDERED**.

DATE: January 4, 2016

HON. MICHAEL M. ANELLO
United States District Judge

14cv1340-MMA (BLM)